# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KEVIN M. TALLEY,

    *Plaintiff*,

*v.*                                      CASE NO. 09-CV-10005

COMMISSIONER OF                DISTRICT JUDGE GEORGE CARAM STEEH
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

benefits, and supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 15.)

Plaintiff was 35 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 16, 52.) Plaintiff's relevant employment history includes work as a truck driver for eleven years. (Tr. at 61.) Plaintiff last worked in 2002. (*Id.*)

Plaintiff filed the instant claims on April 16, 2004, alleging that he became unable to work on February 4, 2004. (Tr. at 52-54.) The claim was denied at the initial administrative stages. (Tr. at 29.) In denying Plaintiff's claims, the Defendant Commissioner considered coagulation defects (including hemophilia) as a possible basis of disability. (*Id.*) On May 14, 2007, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Regina Sobrino, who considered the application for benefits *de novo*. (Tr. at 13-22.) In a decision dated June 14, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 22.) Plaintiff requested a review of this decision on August 15, 2007. (Tr. at 9-11.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 4, 2008, when the Appeals Council denied Plaintiff's request for review. (Tr. at 4-6.) On January 2, 2009, Plaintiff filed the instant suit *pro se* seeking judicial review of the Commissioner's unfavorable decision.

**B.    Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to

the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon

an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 4, 2004. (Tr. at 18.) At step two, the ALJ found that Plaintiff's degenerative disc disease, history of an inguinal strain, and an affective disorder were "severe"

6

within the meaning of the second sequential step. (Tr. at 18-19.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 19.) At step four, the ALJ found that Plaintiff lacked the residual functional capacity to perform his past relevant work. (Tr. at 21.) At step five, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of light work. (Tr. at 19-21.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was examined, at the request of the Disability Determination Services (DDS) by Neil A. Friedman, M.D., who determined that Plaintiff's "[a]ctive range of motion of the major joints of the upper extremities is full," testing of the muscles in "the upper extremities reveals grossly intact strength," "[r]ange of motion in the lower extremities is full," and although Plaintiff "reports right groin pain," he "walks with a grossly normal gait" and "has no difficulty stepping up onto or off of a 9" high stool." (Tr. at 99.) Dr. Friedman concluded that Plaintiff's "examination was grossly negative other than tenderness in the region of the right inguinal canal but no bulging mass was identified." (Tr. at 100.) Dr. Friedman noted that Plaintiff had reported a work-related inguinal strain injury while operating a torque gun on February 4, 2004, but that "[n]o hernia was identified" and Plaintiff "was to return to work with the restriction of no lifting greater than 30 lbs and no use of torque guns. Apparently, these restrictions were intended to be permanent." (Tr. at 100.)

An MRI of the lumbar spine taken in August 2004 showed that "the vertebral heights and alignment are well maintained." (Tr. at 116.) The report's impression statement noted "[s]mall central disc protrusion with an annular tear at L5-S1 level without any evidence for segmental spinal stenosis or neural foraminal stenosis." (Tr. at 116, 159.) An MRI of the bilateral hips taken

7

at that time was "[n]egative" with "[n]o evidence of fracture, avascular necrosis, or tears." (Tr. at 158.)

Medical records from the Hamilton County Health Network dated December 2006 indicate that Plaintiff was "requesting pain medication for continued rt groin and hip pain" and that although he "has seen many doctors over 3 years[, he] has not yet been given a diagnosis." (Tr. at 106.) An x-ray of the right hip taken at that time showed that the "joint space appears normal" and that "[n]o osseous or articular abnormality is seen." (Tr. at 115.)

Plaintiff was also treated at the Catholic Charities from December 2006 through March 2007 with the goal of improving communication skills and reducing mood swings. (Tr. at 122-54.) By March 2007, the counselor noted that Plaintiff had "developed better coping skills" and, although the counselor opined that Plaintiff "will continue to struggle with depressive issues," she indicated she would "proceed with closing the file" since Plaintiff had completed the program. (Tr. at 122.)

Plaintiff's daily activity sheets indicated that he is able to care for his own and his daughter's basic needs, as well as those of his dogs, and that he watches television, cooks meals, visits family members, and drives. (Tr. at 94-96.) Plaintiff testified at the administrative hearing that he can stand, sit or walk for about thirty to forty-five minutes at a time and that he uses a cane when his pain is at its worst even though no doctor prescribed the cane or suggested that he use one. (Tr. at 168-69.) At the hearing, Plaintiff testified that his only hobbies are going to church and going fishing in a large motor boat. (Tr. at 172-73.)

The ALJ asked the Vocational Expert ("VE") to consider a person with Plaintiff's background and:

> to assume someone who cannot lift, carry, push or pull more than 10 pounds frequently, no more than 20 pounds occasionally. Assume an individual who can

8

stand and walk six hours in an eight-hour workday, sit up to eight hours in an eight-hour workday. The person should not need to climb ladders, ropes, or scaffolds. Assume a person who can occasionally climb stairs, occasionally stoop, occasionally crouch. The person should not be exposed to vibration, should not need to use torque guns. Assume a person is limited to doing work that's simple and routine and repetitive. Assume an individual who is able to tolerate superficial contact with co-workers and supervisors, but the person should not have to deal with the general public as a work duty. Superficial contact would not involve confrontation or negotiation. Co-workers, however, could leave off materials, pick them up. There can be a brief exchange of information, but the person should not have to work together with someone else to get the work duty done.

(Tr. at 182.) The VE testified that such a person could perform the following jobs existing in the regional (lower peninsula of Michigan) economy: dishwasher (4,000); janitor (8,300) and assembler (8,000). The ALJ then asked the VE to assume that instead of being able to lift up to 20 pounds, he were could lift, push, pull or handle no more than five pounds frequently and no more than ten pounds occasionally. The VE responded that such a person would be limited to sedentary work and that the following jobs exist in the regional economy: surveillance system monitor (300); assembler (6,500) and inspector (2,000). (Tr. at 183.) In answer to a question from the ALJ, the VE testified that all the jobs he listed would permit a person to sit or stand at will. (Tr. at 186.) When the ALJ asked the VE whether his testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), the VE responded in the affirmative. (Tr. at 184.)

### F. Analysis and Conclusions

### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to perform light work. (Tr. at 26.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling

9

of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff contends that the limitation in the hypothetical to simple, routine, and repetitive work does not accurately address the fact that Plaintiff has a moderate impairment of functioning in the area of concentration, persistence and pace. (Doc. 11 at 8-13, citing Tr. at 20-21.) There is no Residual Functional Capacity ("RFC") assessment or any other medical evidence indicating that Plaintiff has a moderate impairment in the ability to concentrate, persist, or keep pace. Plaintiff relies on the ALJ's statement that such impairment exists but does not meet the Level "C" criteria. The ALJ's finding is not medical evidence. However, even assuming such medical evidence existed, the hypothetical given by the ALJ was not in error.

A hypothetical limitation to "jobs entailing no more than simple, routine, unskilled work" is not, by itself, sufficient to convey moderate limitation in the ability to concentrate, persist, and keep pace. *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005) (cited with approval in *Ealy v. Comm'r of Social Security*, ___ F.3d ___, 2010 WL 394241, at *11 (6th Cir. 2010)). However, I suggest that the hypothetical provided by the ALJ in this case sufficiently conveyed the instant Plaintiff's particular limitations. The hypothetical given thoroughly described the issues Plaintiff addressed in counseling, e.g., communication skills and reducing mood swings. (Tr. at 122-54.) The hypothetical included requirements that the individual tolerate only superficial contact with co-workers and supervisors, should not have to deal with the general public as a work duty, should not have to confront or negotiate with others, should only be exposed to brief exchanges of information, and should not have to work together with someone else to get the work load done. (Tr. at 182.) If anything, the hypothetical may have overstated his limitations since, by the time his counseling ended, it was reported that Plaintiff had "developed better coping skills." (Tr. at 122.)

I therefore suggest that even if there were medical evidence that Plaintiff was moderately limited in concentration, persistence and pace, the ALJ's hypothetical is supported by substantial evidence. *See Infantado v. Astrue*, 263 Fed. App'x 469, 477 (6th Cir. 2008) (substantial evidence supported ALJ's decision where, although the psychiatrist found "moderate" limitations in the plaintiff's ability to maintain attention and concentration for extended periods, the psychiatrist noted plaintiff's daily activities and concluded that the plaintiff was capable of performing simple tasks on a sustained basis); *Moore v. Comm'r of Social Security*, No. 08-14365, 2009 WL 3698550, at *5 (E.D. Mich. Nov. 5, 2009) (finding no error where plaintiff alleged that the ALJ failed to adequately account for moderate limitations in ability to maintain concentration,

persistence, and pace, because doctor concluded that although plaintiff had such limitations, he could do the simple, unskilled work as addressed in the hypothetical) (citing *Johnson v. Comm'r of Social Security*, No. 08-12042, 2009 WL 814509 (E.D. Mich. Mar. 26, 2009)).

Plaintiff also argues that although the ALJ properly incorporated Dr. Benton's opinion that Plaintiff should not lift more than ten pounds, the ALJ improperly discounted Dr. Benton's conclusion that Plaintiff was not "released to work" in any occupation. (Doc. 11 at 14-15; Tr. at 155.) Since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner," I suggest that Dr. Benton's conclusion that Plaintiff was not able to work was properly discounted by the ALJ. *See Kidd v. Commissioner*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Commissioner*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008). Even if Dr. Benton's opinion included underlying medical opinions, I would further suggest that the ALJ's decision to not give controlling weight to his opinion was proper because it was not well-supported and was inconsistent with other substantial evidence in the record. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).

I further suggest that the hypothetical was in harmony with the objective record medical evidence as well as the daily activities described by Plaintiff himself, i.e., that he is able to care for his own and his daughter's basic needs, as well as those of his dogs, and that he watches television, cooks meals, visits family members, and drives. (Tr. at 94-96.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

For all these reasons, after review of the relevant record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of

choice within which decision makers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                 s/ *Charles E Binder*
                                                 CHARLES E. BINDER
Dated: February 26, 2010                          United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: February 26, 2010                                      By    s/*Jean L. Broucek*
                                                                       Case Manager to Magistrate Judge Binder